GRIFFIS, P.J.,
dissenting:
¶ 43. Because I would affirm the circuit court’s entry of summary judgment, I respectfully dissent. The circuit court was correct when it determined that the bid bond was valid, that the MDOT exercised its discretion to reject King’s bid, and that the “Defendants did not breach their contract with King since they provided it with a bid bond that was valid on January 26, 2010.” Therefore, the circuit court correctly concluded that the “Defendants have committed no acts of negligence which would make them liable to King. There [are] no genuine issues of material fact and the Defendants are entitled to summary judgment as a matter of law.”
¶ 44. First, I-will address the bid bond. Byrd held a property and casualty license in Mississippi since 1990. Renasant and Byrd have been licensed with F & D since June 2000. MDOT reviewed King’s bid and decided that the bid bond was invalid because Sircon listed his license (certificate of authority) status as “inactive.” The fact is that King’s proper status was not “inactive.” Instead, although his license had lapsed for ten days six months earlier, the Mississippi Insurance Department neglected to update Byrd’s actual status in Sircon to “active.”
¶ 45. Before the contract was awarded, by letter dated February 4, 2010, the Mississippi Insurance Department advised MDOT that Byrd was a properly licensed insurance agent and that Byrd’s appointment with F & D was effective from June *582 1, 2000, to May 31, 2009, and from January 28, 2010, to the present. The letter also provided that, under Mississippi Code Annotated section 83-17-75(2) (Rev. 2011), appointments of agents are valid up to fifteen days before the execution of the appointment agreement. As a result, Byrd’s appointment by F & D was valid when the bid bond was issued on January 26, 2010.
¶ 46. At the MDOT protest hearing held on February 9, 2010, Robert Perkins, of the Mississippi Insurance Department, appeared and discussed the validity of the bid bond. Perkins told MDOT that Byrd’s license was in effect at the time the bond was issued. As a result, the bid bond was valid and binding. Renasant asked that MDOT recognize the bid bond as valid, as required by Mississippi Code Annotated section 83-17-75(2). Nevertheless, MDOT decided to award the project to another contractor.
¶ 47. There is no dispute that Byrd was an “active” Mississippi insurance agent on January 26, 2010. There is also no dispute that the Mississippi Insurance Department’s digital registry of insurance agents (Sircon) incorrectly listed Byrd’s status as “inactive” on January 26, 2010. When the Mississippi Insurance Department learned of the error, MDOT was advised on the administrative error in Sircon and informed that Byrd was in fact an “active” agent.
¶ 48. The bid bond was issued on January 26, 2010. The reappointment letter between F & D and Byrd was executed on January 28, 2010. Misty Sapp, of Zurich Information Services, sent written approval to the Mississippi Insurance Department on January 28, 2010, to backdate F & D’s appointment of Byrd by fifteen days, which would ensure an effective date of January 13, 2010. Mississippi Code Annotated section 83-17-75(2) provides:
To appoint a producer as its agent, the appointing insurer shall file, in a format approved by the commissioner, a notice of appointment within fifteen (15) days from the date the agency contract is executed or the first insurance application is submitted. An insurer may also elect to appoint a producer to all or some insurers within the insurer’s holding company system or group by the filing of a single appointment request.
The Mississippi Commissioner of Insurance released specific guidance for the fifteen-day grace period within the statute. The Commissioner stated in relevant part that the provision “enables a producer/agent to sell insurance for fifteen (15) days prior to actually being appointed by the company.” Moreover, Roy Tipton, special assistant attorney general and chief counsel for MDOT, also recognized the fifteen-day grace period during his deposition. He testified:
The surety statute has a remedial process which basically allows a surety to write a bond and then qualify with the insurance commission afterwards.... [Tjhere is a grace period. And this is a situation where if he [ (Byrd) ] did all the things necessary to qualify, then the bid bond would be deemed good.
Tipton also testified as follows:
Q. For this project. Okay. So the decision, if [I] understand you correctly, to give the award to the next lowest bidder was based solely on the information you got from Sir-con. Correct?
A. Yes.
Q. Thus ignoring the evidence that the bond was valid prior to actually awarding the bid?
A. The bond was valid prior to award, but was not valid as of the date and time of the bid opening.
*583 Thus, there is no dispute that F & D’s appointment of Byrd was valid as of January 13, 2010, and it was valid on the date of the bid bond (January 26, 2010).
¶ 49. Second, despite the fact that the bid bond was valid, MDOT chose not to grant the contract to King. Tipton also testified:
Q. Okay. But you also told Mr. Lacey that the MDOT could make a determination one way or the other whether a bid should be allowed. Correct?
A. The commissioners have the authority to waive irregularities in a bid.
Q. Okay. And how long can they do that for?
A. Up until the day of the award.
See Hill Bros. Constr. & Eng’g Co. v. Miss. Trans. Comm’n, 909 So.2d 58, 66 (¶ 32) (Miss.2005) (MDOT regulations do not mandate the rejection of any bid submitted in violation of its internal regulations, which may include “[fjailure to execute required affidavits, certificates, etc., and furnish proposal guaranty.”).
¶ 50. Tipton also testified:
Q. I understand that. But the commission has discretion in whether or not they can—
A. Yes, they do.
Q.In whether or not they can waive technical irregularities?
A. Yes, they do.
Q. So in this case, the commission just chose not to exercise that discretion, despite a valid bid bond?
A. I would say yes, they chose not to exercise discretion.
[[Image here]]
Q. Correct. So prior to taking action on this-awarding this bid, all of the defects had been corrected and the evidence was that the bond in question was indeed valid. And under the circumstances you described earlier, this contractor couldn’t have gotten out of that contract, could he?
A. Now you’re asking for a legal opinion. And as of the date and time of bid award with the remedial bond in place, that contractor could not have gotten out of the contract without forfeiting the bid bond. That’s a fair statement.
¶ 51. I agree with the learned circuit judge that “at the time the bid was awarded King had complied with the statute by providing a valid bid bond that was valid on January 26, 2010.” Even more, despite the fact that the bid bond was valid, MDOT had the discretion to waive the certificate requirement, but chose not to do so. Yet the issue of whether or not MDOT abused its discretion in rejecting King’s bid is not before the Court. I find there are no genuine issues of material fact in dispute and the appellees were entitled to a summary judgment. For these reasons, I respectfully dissent.